



















XEROX
GOVERNMENT
EXHIBIT

CASE
NO. 18-20889-CR-JEM

EXHIBIT
NO. 7



ADING-C

GOVERNMENT
EXHIBIT

CASE
NO.   18-20889-CR-JEM

EXHIBIT
NO.      8



AO860-O
GOVERNMENT
EXHIBIT

CASE
NO.   18-20889-CR-JEM

EXHIBIT
NO.

9



GOVERNMENT
EXHIBIT

CASE
NO. 18-20889-CR-JEM

EXHIBIT
NO. 10



**STATE OF SOUTH DAKOTA**
Permit to Carry a Concealed Pistol

**JOHN J DOE**
**500 ANYWHERE STREET**
**PIERRE SD 57501**

| PERMIT: | **111222** | | |
| DOB: | **1/13/1955** | WGT: | **213** |
| HGT: | **6/00** | EYES: | **GREEN** |
| HAIR: | **BROWN** | EXPIRES: | **1/13/2011** |



GOVERNMENT
EXHIBIT

CASE
NO.  18-20889-CR-JEM

EXHIBIT
NO.   11



GOVERNMENT
EXHIBIT

CASE
NO.   18-20889-CR-JEM

EXHIBIT
NO.   12

# MIAMI BEACH POLICE
## VEHICLE STORAGE RECEIPT

OTHER AGENCY CASE #

M.B.P.D. CASE #  2018 - 104247

| YEAR | MAKE | MODEL | BODY | COLOR | DATE OF TOW | TIME OF TOW |
|---|---|---|---|---|---|---|
| 2017 | Ford | F350 | Truck | Red | 10/25/18 | 3:40 AM |

VIN NUMBER: 1FT8W3BTCHEB34276

LOCATION TOWED FROM: 1400 Blk Ocean CT

WRECKER SERVICE: Tremont Towing

LICENSE / YEAR / STATE / TAG NUMBER / TAG INFORMATION

REGISTERED OWNER — NAME: David J Goldammer

REASON FOR TOW: ☐ ACCIDENT ☑ DRIVER ARRESTED ☐ RECOV. STOLEN VEHICLE ☐ ABANDONED ☐ PARKING ☐ OTHER

ADDRESS ▮▮▮▮  PHONE NO.

MESSAGE CENTER INFORMATION

DRIVER OF VEHICLE — NAME
ADDRESS  PHONE NO.

NCIC
FCIC  QRU
DCCJIS

Records OPERATOR
DATE 10/25/18  TIME 10/25/18 @0325

## VEHICLE PROPERTY INVENTORY

| TRUNK LOCKED | SPARE TIRE | RADIO IN CAR | C-B RADIO | TAPE PLAYER | TELEPHONE | KEY IN IGNITION | YES ☑ NO ☐ |
|---|---|---|---|---|---|---|---|
| ☐ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | ☐ YES ☑ NO | ☐ YES ☑ NO | ☐ YES ☑ NO | REGISTRATION PAPERS IN CAR | YES ☐ NO ☑ |

PROPERTY FROM VEHICLE IMPOUNDED YES ☐ NO ☐

MISCELLANEOUS PROPERTY LEFT IN VEHICLE: Cooler, Tools, New Generator, knife Scissors, Misc Items

### VEHICLE DAMAGE/MISSING PARTS
(ENTER # OF ITEMS VISIBLY DAMAGED/MISSING)

| Standard Parts | Missing | Damaged | | Missing | Damaged | | Missing | Damaged |
|---|---|---|---|---|---|---|---|---|
| WHEELS | | | UNDER CARRIAGE | | | ENGINE | | |
| A/C COMP. | | | HOOD | | | REAR END | | |
| LIGHTS | | | DOOR(S) | | | WINDOW(S) | | |
| ALTERNATOR | | | SEAT(S) | | | FENDER(S) | | |
| BATTERY | | | TIRE(S) | | | ROOF(S) | | |

Other Visible Damage

## VEHICLE HOLDS

HOLD VEHICLE UNDER AUTHORITY OF:
☐ FLORIDA FORFEITURE ACT  ☐ EVIDENTIARY MATERIAL  ☐ CURRENT INVESTIGATION

OFFICER PLACING HOLD — PRINT NAME / I.D. #
SIGNATURE / DATE — RECEIVED OCT 25 2018

SUPERVISOR HOLD APPROVAL — PRINT NAME / I.D. #
SIGNATURE / DATE

HOLD FOR:
☐ IMPOUNDS UNIT — REF CONFISCATION
☐ ACCIDENT INVESTIGATION UNIT
☐ C.I.D. INVESTIGATION — DET. _____
☐ S.I.U. INVESTIGATION — DET. _____
☐ MARINE PATROL UNIT
☐ AUTO THEFT UNIT
FOR INFORMATION CALL MBPD IMPOUNDS UNIT — 673-7815
SPECIAL VEHICLE STORAGE: ☐ YES ☐ NO

SPECIFIC LEGAL JUSTIFICATION TO HOLD VEHICLE (narrative): _____

ANY VEHICLE HOLD REQUIRES DETAILED JUSTIFICATION AND SUPERVISOR'S APPROVAL

THE UNDERSIGNED HEREBY CERTIFY THAT THE ABOVE LISTED PROPERTY INVENTORY IS CORRECT TO THE BEST OF OUR KNOWLEDGE.

Manuel Jas  I.D. # 1189
PRINT NAME
SIGNATURE
IMPOUNDING OFFICER

PRINT NAME — Alex #26
SIGNATURE
TOW TRUCK DRIVER

RELEASED TO:
PRINT NAME  PHONE NO.
SIGNATURE
OWNERSHIP PROOF #
I.D. USED
DATE/TIME RELEASED

IMPOUND UNIT VERIFICATION:
TAG: _____ YR _____ STATE _____
VIN: _____
CONDITION: _____
COMMENTS: _____ VERIFIED BY: _____

GOVERNMENT EXHIBIT
ADS86-C
CASE NO. 18-20889-CR-JEM
EXHIBIT NO. 13
Golda

DISTRIBUTION: White/MBPD Impound Unit  Blue/Officer  Green/ MBPD Records  Canary/Tow Co.  Pink/ Tow Co.  Go

MONEY # 27 $ 116.50

MIAMIBEACH

POLICE

PROPERTY RECEIPT

CASE # 2018 - 104247

TYPE OF CASE: DUI / Concealed Weapons

OUTSIDE AGENCY CASE #

INCIDENT DATE: 10/25/18   TIME: 01:59

(STORAGE LOCATION / PEU USE ONLY)

- [ ] I.A. EVIDENCE
- [ ] HOMICIDE EVIDENCE
- [ ] CAPITAL CRIMES EVIDENCE
- [ ] ARREST / TRIAL EVIDENCE
- [x] INVESTIGATORY EVIDENCE
- [ ] FOUND PROPERTY
- [ ] DECEDENTS PROPERTY
- [ ] SAFEKEEPING PROPERTY

ADDRESS AND EXACT LOCATION WHERE PROPERTY WAS ORIGINALLY IMPOUNDED

1400 Blk Ocean CT    Miami Beach    Fl    33139

DISCOVERED BY (NAME): Manuel Jas    ADDRESS: MBPD    CITY    STATE    ZIP    TEL #

NAME: David James Goldammer    OWNER [x] VICTIM [ ]    ADDRESS: /86    CITY    STATE    ZIP    TEL #

SUBJECT NAME: Same as above    INCARCERATED [x] YES [ ] NO    D.O.B.    ADDRESS    CITY    STATE    ZIP

| ITEM # | QUANTITY | DESCRIPTION (COLOR-ARTICLE-BRAND-MODEL-SERIAL #) | CURRENCY TOTALS ONLY DOLLAR | CENTS |
|---|---|---|---|---|
| 1 | 1 | Springfield Armory XD-40 SN-MG352187 Blk | | |
| 2 | 2 | 40 Cal 16 Round magazine (empty) | | |
| 3 | 1 | Springfield Armory XD-40 SN MG189084 w/ | | |
| | | Osprey Tac light, Blk | | |
| 4 | 2 | 40 Cal 16 Round Magazine (empty | | |
| 5 | 1 | Ruger SR22 SN 367-16477 Blk | | |
| 6 | 3 | 22 LR magazine (Empty) | | |

ACKNOWLEDGEMENT OF PROPERTY TAKEN

I hereby acknowledge the above represents all property taken from my possession and I have received a copy of this receipt.

PRINT NAME

SIGNATURE

I hereby acknowledge the above list represents all property impounded by me in the official performance of duty as a Law Enforcement Officer or Support Personnel as defined in F.S.S 943.10.

Manuel Jas    LEAD INVESTIGATOR (PRINT)    SIGNATURE    UNIT: Patrol    METRO ID: 1189

Manuel Jas    IMPOUNDING OFFICER (PRINT)    SIGNATURE    UNIT: Patrol    METRO ID: 1189

REMARKS/NOTES:

| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
|---|---|---|---|---|---|
| 1-6 | | | 2203 | RFS | 10/25/18 0605 |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & |

WHITE TO P.E.U. / YELLOW TO RECORDS / PINK TO OFFICER

AO88-C

GOVERNMENT EXHIBIT

CASE NO.   18-20889-CR-JEM

EXHIBIT NO.   14

MIAMIBEACH
# POLICE
## PROPERTY RECEIPT

CASE #: 2018 - 104247

TYPE OF CASE: DUI / Concealed Weapons

OUTSIDE AGENCY CASE #

INCIDENT DATE: 10/25/18   TIME: 0159
(STORAGE LOCATION / PEU USE ONLY)

- [ ] I.A. EVIDENCE
- [ ] HOMICIDE EVIDENCE
- [ ] CAPITAL CRIMES EVIDENCE
- [ ] ARREST / TRIAL EVIDENCE
- [x] INVESTIGATORY EVIDENCE
- [ ] FOUND PROPERTY
- [ ] DECEDENTS PROPERTY
- [ ] SAFEKEEPING PROPERTY

ADDRESS AND EXACT LOCATION WHERE PROPERTY WAS ORIGINALLY IMPOUNDED
1400 BLK Ocean CT          Miami Beach      Fl      33139

DISCOVERED BY (NAME): Manuel Jas    ADDRESS: MBPD    CITY    STATE    ZIP    TEL #

NAME: David James Goldammer   OWNER [x]  VICTIM [ ]   ADDRESS   /86   CITY   STATE   ZIP   TEL #

SUBJECT NAME: Same as above   INCARCERATED [x] YES [ ] NO   D.O.B.   ADDRESS   CITY   STATE   ZIP

| ITEM # | QUANTITY | DESCRIPTION (COLOR-ARTICLE-BRAND-MODEL-SERIAL #) | CURRENCY TOTALS ONLY DOLLAR | CENTS |
|---|---|---|---|---|
| 7 | 1 | DFMS Panther Arms AR-15 SN F210826 w/ Firefield laser BLK | | |
| 8 | 13 | .223/5.56 Magazines (empty | | |
| 9 | 1 | AR-15 upper receiver w/ Bolt and Forward Grip BLK | | |
| 10 | 1 | Taurus Judge .410 SN BS637498 Sil/BLK Revolver | | |
| 11 | 1 | Taurus .357 Magnum SN LP64875 Brn/BLK Revolver | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FIREARM

ACKNOWLEDGEMENT OF PROPERTY TAKEN
I hereby acknowledge the above represents all property taken from my possession and I have received a copy of this receipt.

PRINT NAME

SIGNATURE

I hereby acknowledge the above list represents all property impounded by me in the official performance of duty as a Law Enforcement Officer or Support Personnel as defined in F.S.S 943.10.

| LEAD INVESTIGATOR (PRINT) | SIGNATURE | UNIT | METRO ID |

| IMPOUNDING OFFICER (PRINT) | SIGNATURE | UNIT | METRO ID |

REMARKS/NOTES:

| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
|---|---|---|---|---|---|
| 7-11 | | | 5103 | RFS | 10/25/18   0627  1042 |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |

WHITE TO P.E.U. / YELLOW TO RECORDS / PINK TO OFFICER

REVISED MAY 2013

Goldammer_00045

**MIAMIBEACH POLICE**

**PROPERTY RECEIPT**

CASE # 2018-104247

TYPE OF CASE: DUI / Concealed Weapons

OUTSIDE AGENCY CASE #

INCIDENT DATE: 10/25/18   TIME: 01:59

(STORAGE LOCATION / PEU USE ONLY)

- [ ] I.A. EVIDENCE
- [ ] HOMICIDE EVIDENCE
- [ ] CAPITAL CRIMES EVIDENCE
- [ ] ARREST / TRIAL EVIDENCE
- [x] INVESTIGATORY EVIDENCE
- [ ] FOUND PROPERTY
- [ ] DECEDENTS PROPERTY
- [ ] SAFEKEEPING PROPERTY

ADDRESS AND EXACT LOCATION WHERE PROPERTY WAS ORIGINALLY IMPOUNDED
1400 Blk Ocean Ct.     Miami beach, fl.   33139

DISCOVERED BY (NAME) Manvel Jas   ADDRESS MBPD

NAME David James Goldammer   OWNER [x] VICTIM [ ]   ADDRESS 86

SUBJECT NAME S.A.A.   INCARCERATED [x] YES [ ] NO   D.O.B.

| ITEM # | QUANTITY | DESCRIPTION (COLOR-ARTICLE-BRAND-MODEL-SERIAL #) | CURRENCY TOTALS ONLY DOLLAR | CENTS |
|---|---|---|---|---|
| 12 | 1 | Green Ammo Container w/ 1200 5.56 Rounds | | |
| 13 | 1 | Green Ammo Container w/ 600 5.56 Rounds | | |
| 14 | 1 | Plastic Green Ammo Container w/ spent casings | | |
| 15 | 1 | Green Ammo container containing w/ 300 5.56 Rounds | | |
| 16 | 1 | Plastic Green Ammo Container w/ 975 22 LR Rounds | | |
| 17 | 1 | Green Plastic Bag w/ Misc Ammo. | | |
| 18 | 1 | Brn Box Containing Misc Boxes of Ammo | | |
| 19 | 1 | Green Rifle case containing Misc Holsters | | |
| 20 | 1 | Green Tac Bag Containing misc Accessories | | |

ACKNOWLEDGEMENT OF PROPERTY TAKEN
I hereby acknowledge the above represents all property taken from my possession and I have received a copy of this receipt.

I hereby acknowledge the above list represents all property impounded by me in the official performance of duty as a Law Enforcement Officer or Support Personnel as defined in F.S.S 943.10.

PRINT NAME

SIGNATURE

LEAD INVESTIGATOR (PRINT) Manuel Jas   SIGNATURE   UNIT Patrol   METRO ID 1189

IMPOUNDING OFFICER (PRINT) Manuel Jas   SIGNATURE   UNIT Patrol   METRO ID 1189

REMARKS/NOTES:

| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
|---|---|---|---|---|---|
| 12 - 20 | R | | 7005 | RFS | 10/25/18 0162 |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |

WHITE TO P.E.U. / YELLOW TO RECORDS / PINK TO OFFICER

REVISED MAY 2013

MIAMIBEACH
POLICE
PROPERTY RECEIPT

CASE #
2018-104247

TYPE OF CASE:
DUI / Concealed Weapons

OUTSIDE AGENCY CASE #

| INCIDENT DATE: | TIME: |
|---|---|
| 10/25/18 | 01:59 |

(STORAGE LOCATION / PEU USE ONLY)

- [ ] I.A. EVIDENCE
- [ ] CAPITAL CRIMES EVIDENCE
- [X] INVESTIGATORY EVIDENCE
- [ ] DECEDENTS PROPERTY
- [ ] HOMICIDE EVIDENCE
- [ ] ARREST / TRIAL EVIDENCE
- [ ] FOUND PROPERTY
- [ ] SAFEKEEPING PROPERTY

ADDRESS AND EXACT LOCATION WHERE PROPERTY WAS ORIGINALLY IMPOUNDED
1400 Blk of Ocean Ct          Miami Beach, Fl.     33139

| DISCOVERED BY (NAME) | ADDRESS | CITY | STATE | ZIP | TEL # |
|---|---|---|---|---|---|
| Manuel Jas | MBPD | | | | |

| NAME | OWNER [X] VICTIM [ ] | ADDRESS | CITY | STATE | ZIP | TEL # |
|---|---|---|---|---|---|---|
| David James, Goldammer | | 86 | | | | |

| SUBJECT NAME | INCARCERATED [X] YES [ ] NO | D.O.B. | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| S.A.A. | | | | | | |

| ITEM # | QUANTITY | DESCRIPTION (COLOR-ARTICLE-BRAND-MODEL-SERIAL #) | CURRENCY TOTALS ONLY DOLLAR | CENTS |
|---|---|---|---|---|
| 21 | 42 | Loose 22 LR Rounds | | |
| 22 | 64 | Loose 40 caliber Rounds | | |
| 23 | 330 | Loose 5.56mm Rounds | | |
| 24 | 1 | Blk Plate Carrier w/ 2 Rifle Rated Plates | | |
| 25 | 4 | Braun God Foldable Pocket Knife | | |
| 26 | 1 | Laminated South Dakota Permit to Carry Concealed | | |
| | | Pistol # 158901 | | |
| | | | | |
| | | | | |
| | | | | |

ACKNOWLEDGEMENT OF PROPERTY TAKEN
I hereby acknowledge the above represents all property taken from my possession and I have received a copy of this receipt.

PRINT NAME

SIGNATURE

I hereby acknowledge the above list represents all property impounded by me in the official performance of duty as a Law Enforcement Officer or Support Personnel as defined in F.S.S 943.10.

| LEAD INVESTIGATOR (PRINT) | SIGNATURE | UNIT | METRO ID |
|---|---|---|---|
| M. Jas | | Patrol | 1189 |

| IMPOUNDING OFFICER (PRINT) | SIGNATURE | UNIT | METRO ID |
|---|---|---|---|
| M. Jas | | Patrol | 1189 |

REMARKS/NOTES:

| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
|---|---|---|---|---|---|
| 21-26 | Ra | | 3103 | CFS | 10/25/18 0634 |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |

WHITE TO P.E.U. / YELLOW TO RECORDS / PINK TO OFFICER

REVISED MAY 2013

Goldammer_00047

MONEY # 27 \$ 116

**MIAMI BEACH POLICE**

**PROPERTY RECEIPT**

| CASE # | 2018-104247 |
|---|---|
| TYPE OF CASE: | DUI / Conceal Carry |
| OUTSIDE AGENCY CASE # | |

| INCIDENT DATE: | TIME: |
|---|---|
| 10/25/18 | 0159 |

(STORAGE LOCATION / PEU USE ONLY)

| | |
|---|---|
| ☐ I.A. EVIDENCE | ☐ CAPITAL CRIMES EVIDENCE |
| ☐ HOMICIDE EVIDENCE | ☐ ARREST / TRIAL EVIDENCE |
| ☐ INVESTIGATORY EVIDENCE | ☐ DECEDENTS PROPERTY |
| ☐ FOUND PROPERTY | ☒ SAFEKEEPING PROPERTY |

ADDRESS AND EXACT LOCATION WHERE PROPERTY WAS ORIGINALLY IMPOUNDED
1400 blk of Ocean Ct.    Miami Beach, Fl.    33139

| DISCOVERED BY (NAME) | ADDRESS | CITY | STATE | ZIP | TEL # |
|---|---|---|---|---|---|
| Manvel Jas | MBPD | | | | |

| NAME | OWNER ☒ VICTIM ☐ | ADDRESS | CITY | STATE | ZIP | TEL # |
|---|---|---|---|---|---|---|
| David J. Goldammer | | | | | | |

| SUBJECT NAME | INCARCERATED ☐ YES ☐ NO | D.O.B. | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| S.A.A. | | 86 | | | | |

| ITEM # | QUANTITY | DESCRIPTION (COLOR-ARTICLE-BRAND-MODEL-SERIAL #) | CURRENCY TOTALS ONLY DOLLAR | CENTS |
|---|---|---|---|---|
| 27 | 1 | U.S. Currency 100. Dollar Bill | \$ 100 | 00 |
| | 5 | U.S. Currency 1 Dollar Bill | \$ 5 | 00 |
| | 46 | U.S. Currency Quarters | \$ 11 | 50 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | Total | \$ 116 | 50 |

ACKNOWLEDGEMENT OF PROPERTY TAKEN
I hereby acknowledge the above represents all property taken from my possession and I have received a copy of this receipt.

I hereby acknowledge the above list represents all property impounded by me in the official performance of duty as a Law Enforcement Officer or Support Personnel as defined in F.S.S 943.10.

| | LEAD INVESTIGATOR (PRINT) M. Jass | SIGNATURE | UNIT Lato | METRO ID 1189 |
|---|---|---|---|---|
| PRINT NAME | IMPOUNDING OFFICER (PRINT) M. Jas | SIGNATURE | UNIT Lato | METRO ID 1189 |
| SIGNATURE | | | | |

REMARKS/NOTES:

| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
|---|---|---|---|---|---|
| 27 | | | 7023 | R15 | 10/25/18  0639 |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |
| ITEM # | PRINT NAME | SIGNATURE | METRO/ID | REASON | DATE & TIME RECEIVED |

WHITE TO P.E.U. / YELLOW TO RECORDS / PINK TO OFFICER

REVISED MAY 2013

Goldammer_00048

**SUBJECT:   TOWED / IMPOUNDED
                        VEHICLES**

**S.O.P.**          **#133**

**Accreditation
Standards:**      61.1.11; 61.4.3a,b,c

**PURPOSE:**   To establish procedures for the im-
pound, tow, inventory, storage, hold, and release
of abandoned, stolen, seized, crime scene or ar-
restee-operated vehicles / vessels.

**SCOPE:**   This SOP applies to all employees of
the Department.

**POLICY:**   The Department's policy is to ensure
compliance with the legal requirements when ve-
hicles are required to be moved by the direction of
Department employees.

**PROCEDURE:**

I.   **Legal Authority**

    A.   Police officers or authorized non-sworn
    employees possess legal authority to
    remove vehicles / vessels from road-
    ways / from waterways and public prop-
    erty for the following reasons: **[61.4.3a,b]**

       1.   It is necessary to provide for the
       safety and security of the vehicle or
       the public.

       2.   The vehicle is left upon a street and
       is parked illegally so as to consti-
       tute a definite hazard or obstruction
       to the normal movement of traffic.

       3.   An unauthorized vehicle is parked,
       unattended, within a designated
       "parking by disabled permit only,"
       "parking for disabled only" or "park-
       ing for wheelchair drivers only"
       space in violation of FSS,
       316.1955, 316.1956, or Miami-
       Dade Ordinance 30-447.

       4.   The vehicle is abandoned, parked,
       or stored on the public trafficway
       for a period exceeding <u>48 hours</u>, in
       other than designated parking ar-
       eas, and within 30 feet of the road-
       way or pavement edge determined
       not to be private property.

       5.   As a result of severe injury or death
       to the driver / occupant(s) and / or

disabling damaged incurred in a
motor vehicle traffic accident.

6.   A vehicle is parked, unattended,
upon any bridge, causeway or via-
duct.

7.   The driver of a vehicle is taken into
custody and the vehicle would be
left unattended on the street.

    a.   The officer must give the per-
    son having custody and con-
    trol of the vehicle a reasonable
    opportunity, in light of the cir-
    cumstances, to provide for
    removal of the vehicle within a
    reasonable amount of time. If
    the driver is unable to provide
    for removal and elects to allow
    the vehicle to remain in place
    (if legally parked), the driver /
    owner must sign an **"Owner /**
    **Driver Release" Form (See**
    **Form 015-W)**. If the owner /
    driver refuses or is unable to
    sign the release, the vehicle
    must be towed. **[61.1.11]**

8.   The vehicle has been stolen or
used in the commission of a crime.

9.   The vehicle was used in the com-
mission of a felony and seized in
accordance with the Florida Con-
traband Forfeiture Act.

10.  A vehicle is found upon city streets
and does not bear a license tag
(FSS 316.605(I)).

11.  It is necessary to provide for the
safety and security of the vessel or
the public.

12.  The vessel is found abandoned on
any waterway in the State of Flor-
ida, or when a vessel has been
damaged and constitutes a hazard
to navigation.

13.  The vessel has been stolen or used
in the commission of a crime.

14.  The vessel has been used in the
commission of a felony and is con-
fiscated in accordance with the
Florida Contraband Forfeiture Act.

15.  The vessel operator is taken into
police custody and the vessel
would be left unattended in the wa-



AO386-C
**GOVERNMENT
EXHIBIT**

CASE
NO.   18-20889-CR-JEM

EXHIBIT
NO.   15



MIAMI BEACH
POLICE

ter or in the control of an incapable operator.

**B.** Florida State Statute 715.07 regulates the impounding of vehicles / vessels from private property when requested by the property owner or authorized agent. The statute is civil in nature. Police action to remove such vehicles / vessels is **NOT** authorized and shall not be undertaken unless:

    **1.** A court order has been issued or it is determined that the vehicle is stolen or has been used in the commission of a crime and a warrant has been obtained.

    **2.** Officers can assist property owners by providing the name and address of the vehicle owner, if the information is available.

    **3.** Property owners will be advised to seek legal advice on the proper posting of their property to allow the towing of abandoned or disabled vehicles.

## II. Civil Liability

**A.** Mishandling of towed or impounded vehicles / vessels may result in civil liability for the City and the Department employee concerned.

**B.** Civil liability may be incurred by the City and Department employee concerned by not releasing a vehicle to an individual who is legally entitled to recover it.

**C.** Neither the City nor the Department employees concerned shall be held liable for any damage to, theft of, or theft from a vehicle when the owner or driver has elected not to remove the vehicle.

## III. Towing of Vehicles Following Arrest

**A.** When the operator of a vehicle is arrested and the vehicle is to be impounded for safekeeping the following will apply:

    **1.** A vehicle clearance check shall be made to determine its status and owner information, i.e., VIN verification.

    **2.** If it is not stolen or wanted a **"Vehicle Storage Receipt"** shall be prepared **(See Form 133-B).**

    **3.** A rotation wrecker will be called via PSCU.

    **4.** The vehicle will be inventoried prior to removal to account for all equipment and property.

**B.** When the operator of a vehicle is arrested and the vehicle is to be released the following apply:

    **1.** A vehicle clearance check shall be made to determine its status and owner information.

    **2.** The vehicle may be released to a person designated by the driver, who possesses a valid driver's license who may, if mentally and physically capable, take possession and move the vehicle.

    **3.** Company owned vehicles will only be released to an authorized designee of the company.

    **4.** The vehicle may be parked and locked if lawful and not a hazard, and later removed within a reasonable length of time not to exceed 48 hours, in a manner provided by the driver.

    **5.** The officer will complete an "Owner / Driver Release Form" and a disclaimer of liability on the record's (yellow) copy of the Complaint / Arrest Affidavit.

## IV. Stolen Vehicle Recovery

**A.** A vehicle determined to be stolen, when practicable, will be released at the scene to the owner.

    **1.** Unless it was used in the commission of a crime **(See Section VII Vehicle Holds – D1).**

**B.** If the steering column or ignition switch has been tampered with, or damaged, the vehicle shall not be driven away from the scene.

    **1.** The vehicle will be released to the owner only if a private tow truck responds and removes the vehicle in the officer's presence, within 30 minutes or,

    **2.** The vehicle will be impounded and towed by a rotation wrecker. A "Vehicle Storage Receipt" shall be prepared. -



C. When the vehicle owner cannot be contacted to take custody of the vehicle within a reasonable amount of time, the vehicle will be towed by an on call rotation wrecker and a "Vehicle Storage Receipt" will be completed.

D. In all of the above situations, PSCU shall be notified of the vehicle's recovery immediately following its release or tow.

E. Reports

    1. If the vehicle was stolen outside the Department's jurisdiction, a **"Vehicle Report" (See Form 015-DD)** will be completed under a Department case number and the status code of: recovered.

    2. If the vehicle was stolen from within the Department's jurisdiction a "Vehicle Report" under the original case number will be completed.

## V. Removal of Traffic Hazards or Obstructions

A. Attended Vehicles

    1. Attended inoperable vehicles that are obstructing a highway or roadway, or are otherwise creating a traffic hazard, will be removed by the owner or person responsible for the vehicle.

        a. The owner / driver shall be given a reasonable amount of time depending on weather, traffic, lighting conditions, and other pertinent considerations, to remove the vehicle.

        b. If the vehicle continues to present a traffic hazard, the owner shall be given the option of having the vehicle towed by a wrecker of his choosing or by a contracted rotation wrecker.

B. Unattended Vehicles

    1. When unattended inoperable vehicles that are obstructing a highway or roadway, or is otherwise creating a traffic hazard the following will apply:

        a. A vehicle clearance check shall be made to determine its status;

        b. If it is not stolen or wanted, the officer shall make a reasonable effort to locate the owner / driver and have the vehicle removed;

        c. If a canvass of the immediate area or other attempts to locate the owner / driver are unsuccessful, the vehicle shall be towed by the contract rotation wrecker.

            1) A "Vehicle Storage Receipt" shall be completed and PSCU notified.

## VI. Impound / Tow Procedures

A. When an officer determines that a vehicle is to be towed / impounded he will: [61.4.3b]

    1. Inspect the vehicle and visually determine the vehicle identification number (VIN) and license tag number.

    2. Request PSCU to conduct a complete check of the vehicle to determine ownership and status.

        a. The Department is responsible for ascertaining the name and address of the owner / driver, if applicable, and determining the wanted status of the vehicle prior to towing.

    3. Complete a "Vehicle Storage Receipt" containing the following information:

        a. Name, address, and phone number (if available) of the registered owner;

        b. Name, address and phone number (if available) of the driver;

        c. Date and time of tow;

        d. Location vehicle is being towed from;

        e. The wrecker service name;

        f. Department case number;

        g. The reason for the tow;

        h. Vehicle information: year, make, model, body type, color, vehicle identification number,



license tag information (year, state, tag number).

4. Visually inspect the exterior and interior of the vehicle and note damage on the "Vehicle Storage Receipt."

5. It is essential that a complete inventory be conducted of every vehicle. When an officer initiates a tow, he becomes responsible for the vehicle. He is liable for the vehicle, its parts, and contents.

6. The interior of the vehicle will be carefully inventoried, including under seats, in the trunk, and all compartments, to determine items present.

7. The contents of the vehicle include, but are not limited to:

   a. All packages and containers located within the passenger compartment;

   b. The trunk, glove compartment area; and

   c. Any other secured and unsecured area of the vehicle.

8. **To ensure that liability does not attach for property located within any package or container, the contents of the package or container, whether it is opened or closed, will be accounted for and inventoried.**

   a. If any container, trunk or compartment is locked, and the key is not available, the officer will contact a supervisor before taking any further action.

9. Valuable items which are portable and all firearms will be placed in the Property and Evidence Unit for safekeeping and noted on the "Vehicle Storage Receipt".

10. If, during a routine inventory, evidence, contraband, or proceeds or instruments of a crime are discovered, appropriate enforcement action shall be taken.

11. The tag will be removed and impounded under a separate case number with the appropriate case report completed when:

    a. The tag is stolen, but the vehicle is not.

    b. The vehicle is stolen, but the tag is not.

    c. The vehicle and tag are both stolen, but are different cases.

    d. The tag is needed as evidence.

    e. Circumstances require the tag to be impounded separately.

12. Contact PSCU and request a contract rotation wrecker.

    a. Request for special equipment (car-carrier, heavy-duty trucks, etc.) are to be done at the time of the initial request.

       1) Reason for special requests are to be documented on the Vehicle Storage Receipt.

       2) Reasons for additional labor charges are also to be documented on the Vehicle Storage Receipt, i.e.,

          a) Wrecker on the scene in excess of thirty minutes;

          b) Special equipment used by wrecker service;

          c) Removal of vehicle from water;

          d) Use of dollies;

          e) Unlocking of vehicle;

          f) Requirement for an additional wrecker.

13. Provide PSCU with the following information after completion of the Vehicle Storage Receipt and prior to returning to service.

    a. Case Number.

    b. Vehicle Description.

       1) License tag number, state and year.



      **2)** Decal Number.

      **3)** VIN.

      **4)** Vehicle color, year, make model and style.

    **c.** Reason for impounding or tow.

    **d.** Condition of vehicle.

    **e.** Tow company.

    **f.** Name and unit authorizing a hold, if applicable.

## VII. Vehicle Holds

**A.** A hold may be placed on a vehicle if:

    **1.** The vehicle used in the commission of a crime-hold for forfeiture.

    **2.** The vehicle is considered contraband by Florida Statute – hold for forfeiture.

    **3.** The vehicle is evidence – Hold for specific unit, i.e., AIU, CID, SIU, etc.

    **4.** The vehicle is crime scene needing processing – Hold for crime scene.

    **5.** The vehicle has altered vehicle identification numbers – Hold for auto theft.

**B.** All holds require a supervisor's signature on the "Vehicle Storage Receipt". The supervisor will be responsible that the hold is justified.

**C.** For forfeiture hold see **SOP #008 - Forfeitures & Vehicle Holds**.

**D.** It is the officer's responsibility to contact the specific entity and advise them that there is a hold on the vehicle.

    **1.** If the vehicle is being held for processing it will be the responsibility of the officer who placed the hold to ensure that the Crime Scene Unit receives a Crime Scene Processing Request for the vehicle.

      **a.** If the vehicle is part of a crime scene, it will be secured and not inventoried until it can be processed by a Crime Scene Technician.

        **1)** This should be noted on the Vehicle Storage Receipt.

**2.** The appropriate specific entity supervisor will assign the Vehicle Storage Receipt indicating the hold to an investigator for review and all necessary action.

    **a.** The investigator will, in all cases, write a Supplemental Report within 5 days indicating either releasing the vehicle or stating a supervisor approved reason for continuing the hold.

    **b.** If the hold is to remain on the vehicle longer than 5 days, the investigator shall justify the reason in the Supplemental Report and write **"vehicle is to be removed from the tow lot to the Department impounds area (roof)"**.

      **1)** The appropriate specific entry supervisor shall be responsible for the timely disposition of all vehicle "holds" forwarded to their unit.

    **c.** In both instances, either when the vehicle is released or requested to be held for a long period, the assigned investigator will personally hand delivery a copy of the Supplemental Report to the Vehicle Research Office.

**E.** Criteria and Procedures

    **1.** Major Crimes – When the vehicle may contain certain physical evidence follow-up investigation relating to processing or an in-depth search is needed.

    **2.** AIU – When a vehicle has been involved in a crash and a death or high probability of a death occurs, a mechanical inspection is needed or a hit and run investigation is needed, a hold for AIU will be done. The hold is handled the same as any other hold except that a copy of the Vehicle Storage Receipt is to be sent to the AIU / DUI Squad Supervisor in the Patrol Division and a Vehicle / Property Report is to be completed justifying the hold. After review by a Patrol Sergeant, an on-duty investigator

will be advised of the circumstances and approve the hold.

**a.** The officer completing the Vehicle Storage Receipt will write the authorizing investigator's name on the form.

**b.** If there is no on-duty investigator available and the case does not necessitate an on-call response, the Patrol Sergeant shall personally place the hold.

**3.** Auto theft — When circumstances dictate that an **actual physical inspection** of the vehicle by an investigator is necessary, i.e., the vehicle's identification numbers may be false.

**a.** Prior to placing an Auto Crimes Squad hold, an on-duty Patrol Vehicle Identification Officer (VIO) shall inspect the vehicle and co-sign the vehicle Storage Receipt.

**b.** A hold **shall be placed solely** for the following reasons:

**1)** A recovered stolen vehicle;

**2)** The vehicle has a stolen tag or decal.

**3)** The vehicle has a tag that is not assigned.

**4)** The ownership / registration is unknown or questionable. The officer may write a report to initiate an investigation into the vehicles status if merited.

**a)** Note: The tow company assumes the responsibility to release the vehicle to the owner with proof of ownership.

**F.** Other Agency Holds

**1.** When an officer requests PSCU to complete a check of a vehicle and PSCU advised that an NCIC / FCIC message has been received where a hold for another agency has been

requested, the officer is to contact a Patrol Supervisor.

**a.** After review by a Patrol Supervisor, an on-duty investigator will be advised of the circumstances and approve the hold.

**b.** The officer completing the vehicle storage receipt will write the authorizing investigator's name in the area marked "CIU-Detective _____".

**c.** If there is no on-duty investigator available (after hours) and the case does not necessitate an on-call response, the Patrol Supervisor shall personally place the hold.

**d.** PSCU will respond via teletype to the other agency with the following message:

**1)** "Reference to your Case #_____, M.B.P.D. Case #_____, (vehicle description, i.e., VIN, Tag), has been towed to _____ (name of storage facility) and a hold was placed for your agency. The hold will not exceed five (5) days. Your agency is responsible for contacting the Vehicle Research Office at area code (305) 673-7960 to cancel the hold or make arrangements to transfer the vehicle to your agency within five (5) days.

**2)** A written request from your agency must be received by the M.B.P.D. if you want the hold on the vehicle to be extended past the 5th day. This request should be sent to M.B.P.D. Vehicle Research Office, 1100 Washington Avenue, Miami Beach, Florida 33139. Please contact the above unit if your



agency has any questions."

e. Copies of the original teletype requesting the hold and any other teletypes pertaining to the case are to be sent to the following:

1) Vehicle Research Office.

2) Unit placing the hold.

3) Auto Crimes Squad.

4) All original teletypes to the Records Management Section as a permanent record.

G. Vehicles Towed to the Police Station

1. A vehicle can be towed to the police station for the following reasons:

a. Only major crimes when merited for processing or further investigation.

b. Only when approved by a Criminal Investigation Division Supervisor who shall be responsible for ensuring that the vehicle is removed by the end of the shift.

1) If the case requires a longer period, the lead investigator shall complete a Supplemental Report noting the reason. The Supplemental Report shall be signed by the investigator's Sergeant and Lieutenant indicating authorization.

2) The lead investigator shall request a designated location to park the vehicle from the Property and Evidence Unit.

## VIII. Releasing Vehicles and Holds

A. Documentation Needed to Release Vehicle

1. The Vehicle Storage Receipt or Vehicle Release will reflect the proof of ownership utilized to release the vehicle. Proof of owner-

ship shall include, but not be limited to the following:

a. The original or certified copy of the title certificate or a current vehicle registration issued by the any state.

b. Any duly executed document prepared by the owner of record which authorizes the claimant to obtain the vehicle.

1) Each claimant will be required to establish proof of identify by means of current driver's license, voter's registration, or student identification card.

2) Any claimant unable to produce the foregoing may be required to establish such proof by means of fingerprinting.

c. A properly completed title reflecting the previous owner's signature and a notary seal on the reverse side (Form 1), if a licensed automobile dealer claims ownership, pursuant to Florida Statute, Chapter 319.

d. An executed proof of loss statement, evidence of payment of claim, and a bill of sale, title certificate, or other satisfactory evidence of ownership, if an insurance company claims ownership by virtue of payment to the owner for total loss.

2. When a claimant is unable to provide or establish proof of ownership or entitlement, one of the following may authorize a release after establishing entitlement by other means.

a. Impounding officer.

b. Lead investigator.

c. Vehicle Research Office.

d. PEU Commander.

B. Each respective component will handle those vehicles held for them as indicated on the Vehicle Storage Receipt.



1. Vehicles will be immediately released by the assigned investigators once a determination by the investigator is made to release the vehicle by notifying the Property and Evidence Unit (PEU) via a Supplemental Report canceling the hold.

2. The PEU Commander (or designee) is the <u>only</u> person who can authorize the tow companies to release a hold on a vehicle.

3. This determination must be made within five (5) days, excluding weekends and holidays, so as not to incur cost to the city.

C. The Vehicle Research Office's Information on the status of all vehicle holds is available 24 hours a day / 7 days a week.

1. The Vehicle Research Office will contact the components with holds on vehicles, on a weekly basis, requesting the status of the hold.

D. Florida Statute 323.001, Wrecker Operator Storage Facilities; Vehicle Holds, will govern the Department's actions in these cases. The statute states:

1. An investigating agency may place a hold on a motor vehicle stored within a wrecker operator's storage facility for a period not to exceed five (5) days, excluding holidays and weekends unless extended in writing.

2. The investigating agency must notify the wrecker operator in writing within five (5) days, excluding holidays and weekends, whether the hold is to be continued. If no notification follows this period of time, the wrecker operator may release the vehicle to the designated person pursuant to s. 713.78.

a. If the hold is to continue beyond five (5) days, excluding holidays and weekends, the investigating agency may have the vehicle removed to a designated impound lot, in which event the vehicle will not be released by the investigating agency to the owner or lien holder of the vehicle until proof of payment of the towing and storage charges incurred by the wrecker operator is presented to the investigating agency.

b. If the investigating agency chooses to have the vehicle remain at the wrecker operator's storage facility beyond five (5) days, excluding holidays and weekends, pursuant to the written notification, the investigating agency shall be responsible for payment of the storage charges incurred by the wrecker operator for the requested extended period. In such an event, the owner or lien holder shall be responsible for payment of accrued towing and storage charges for the first five (5) days, excluding holidays and weekends, when the investigating agency either moves the vehicle from the wrecker operator's storage facility to a designated impound lot or provides written notification to extend the hold on the vehicle prior to the expiration of the five (5) days, excluding holidays and weekends.

c. The towing and storage rates for the owner or lien holder of the held vehicle shall not exceed the rates for the investigating agency.

3. If there is a judicial finding of no probable cause for having continued the immobilization or impoundment, the investigating agency ordering the hold must pay the accrued charges for any towing and storage.

4. The requirements for a written hold apply when the following conditions are present:

a. The officer has probable cause to believe the vehicle should be seized and forfeited under the Florida Contraband Forfeiture Act, ss. 932.701-932.704;



**b.** The officer has probable cause to believe the vehicle should be seized and forfeited under s. 372.312;

**c.** The officer has probable cause to believe the vehicle was used as the means of committing a crime;

**d.** The officer has probable cause to believe that the vehicle is itself evidence that tends to show that a crime has been committed or that the vehicle contains evidence, which cannot readily be removed, which tends to show that a crime has been committed;

**e.** The officer has probable cause to believe the vehicle was involved in a traffic accident resulting in death or personal injury and should be sealed for investigation and collection of evidence by a vehicular homicide investigator;

**f.** The vehicle is impounded or immobilized pursuant to s. 316.193 or s. 322.34; or

**g.** The officer is complying with a court order.

**5.** The hold must be in writing and must specify:

**a.** The name and agency of the law enforcement officer placing the hold on the vehicle;

**b.** The date and time the hold is placed on the vehicle;

**c.** A general description of the vehicle, including its color, make, model, body style, and year;

**d.** VIN (Vehicle Identification Number); registration license plate number, state, and year; and validation sticker number, state, and year;

**e.** The specific reason for placing the hold;

**f.** The condition of the vehicle;

**g.** The location where the vehicle is being held; and

**h.** The name, address, and telephone number of the wrecker operator and the storage facility.

**6.** A wrecker operator's storage facility must comply with a hold placed by a law enforcement officer, including instructions for inside or outside storage. A wrecker operator's storage facility may not release a motor vehicle subject to a hold to any person except as directed by the law enforcement agency placing the hold.

**7.** When a vehicle owner is found guilty of, or pleads nolo contendere to, the offense that resulted in a hold being placed on his vehicle, regardless of the adjudication of guilt, the owner must pay the accrued towing and storage charges assessed against the vehicle.

**E.** Impound Vehicles

**1.** Impounded vehicles will not be released without written authority of the impounding officer, his immediate supervisor, confiscations officer or the concerned entity supervisor.

**a.** The Vehicle Research Office will be notified immediately to arrange for the release of a hold.

## IX. Impounding Stolen Vehicles From Wrecker Company

**A.** Upon discovering a stolen vehicle on the premises of a wrecker company, an officer may impound the vehicle if:

**1.** It is necessary to remove the vehicle to another location for the purposes of processing it for evidence.

**2.** The vehicle will be needed as evidence in a criminal investigation.

**3.** The vehicle is removed pursuant to a search warrant.

**B.** If the vehicle is not to be impounded, the officer will report the recovery as outlined in section IV of this SOP.

**1.** The officer shall leave the recovered stolen vehicle in the possession of the wrecker company. A Vehicle Storage Receipt will be



completed with **"STORAGE ONLY"** written boldly across the top. The officer will secure the signature of the wrecker company representative for release of the vehicle on the scene, where the owner / driver signature is indicated on the Vehicle Storage Receipt.

C. A stolen vehicle recovered at a wrecker company shall not be impounded for the sole purpose of returning it to the titled owner.

D. The impounding of stolen vehicles discovered pursuant to an inspection conducted under Florida Statute 812.055 (physical inspection of junkyards, repair shops, parking lots, public garages, towing / storage facilities, etc.) shall also be governed by the above guidelines.

X. **Vehicle Research Office**

A. Vehicle Research Office is responsible for the following:

1. Ensure that a Vehicle Storage Receipt is received for all towed vehicles, and that necessary corrections are made and provided to the PSCU message center, CAD system and any other system related to towed vehicles.

2. Visually inspect the impound lot on a routine basis to confirm the status of vehicles impounded by the Department.

3. Notify the message center of released vehicles.

4. Provide a status report of the number of vehicles towed and impounded on a monthly basis. The above status report will provide an account of the Department's surcharges owed for each towed vehicle.

5. Confirm that tow companies are meeting their contractual obligations.

6. Provide a liaison with the confiscations officers, tow companies, legal unit, Parking Department and other components of the Department.

7. Provide a central location for all inquiries concerning impounded and towed vehicles.

8. Notify the PEU Commander of any property left inside a vehicle which has not been accounted for in the tow sheet. The Division Commander of the unit responsible for towing the vehicle will then be notified for further follow-up.

9. Receive a list of city towed vehicles to be auctioned, verifying that they are not a FCIC / NCIC hit and ensuring that the tow company has met Florida State Statutes in the disposal of the vehicles.

10. Monitor police tows that are designated as "holds", ensuring that within five (5) days the appropriate Department unit notifies the Vehicle Research Section requesting the vehicle to be moved to the station storage area for further investigation.

11. Receive and maintain a file of any complaints regarding the tow company and when appropriate refer to the designated City Department for handling. Designated departments may include the Department's legal advisor, Parking Department and any other City Department that directly affects the operation of the section.

12. Coordinate information with the confiscation officer and legal advisor regarding all vehicles to be seized for confiscations / forfeiture. This will be accomplished by providing to the confiscations officer copies of Vehicles Storage Receipts, lien holder information and blue book value of the seized vehicle. Notices of seizure or written notification from the confiscations officer will then cause said vehicle to be relocated to the Department storage area.

13. Maintain a file on all vehicles being held pursuant to Florida Statute 322.43(5a). The FCIC response to a vehicle check on this hold will be "Florida Authorities Only -- Impound vehicle if driver is owner or co-owner."

a. The Vehicle Research Office will be responsible for notifying



the tow company of this hold and provide the tow company with the following information: Any co-registered owners other than the person arrested, any person of record claiming a lien and any lessor.

    b.   The Vehicle Research Office will be responsible for releasing the hold on the vehicle if the following occurs.

        1)  Lessor or lien holders claim the vehicle.

        2)  The owner presents proof of insurance.

        3)  The owner presents proof of sale.

        4)  The buyer presents proof of insurance.

## XI. Contract Tow Company

    A.   Contract tow companies are required pursuant to the City contract, to maintain a daily record reflecting the following information: [61.4.3c]

        1.  Number of service calls requested by the Department.

        2.  List of impounded vehicles.

        3.  Vehicle owner contacted and by what means.

        4.  Hold order on each affected vehicle.

        5.  Date of vehicle release, recipient's name, and authority.

    B.   A contract tow company is responsible for:

        1.  A Vehicle Storage Receipt must be completed by an officer before a contract service tow is hooked up, unless the vehicle is being towed at an owner / driver request.

        2.  Notifying the owner of a towed vehicle.

        3.  Meeting the contractual response time of twenty (20) minutes for a police tow.

    C.   Tow Charges

        1.  The vehicle owner / driver is responsible for all towing, service and storage charges, which are paid directly to the towing contractor. Exceptions to this policy must be requested via memorandum from a unit supervisor (lieutenant or higher) to the PEU Commander. Unauthorized towing and storage bills accepted by Department employees will be referred to the employee's Commander for resolution.

        2.  Towing and service charges begin to accrue after complete mechanical connection is made. Officers who order a wrecker operator to release a vehicle without payment of these charges place the Department in violation of the City of Miami Beach Tow Truck Services Contract, and the Department become liable for the charges to the contractor.

        3.  Officers have the right to cancel a request for services of a participating contractor at any time prior to hook-up, which is defined as a complete mechanical connection. The mere response to a service scene without further action does not constitute a service for which charges are applicable.

## DEFINITIONS:

For procedural purposes, the following definitions are applicable:

**VEHICLE** – As defined by Florida Statute 316.003; e.g., motor vehicle, trailer.

**TOWED VEHICLE** – A vehicle which the officer causes to be removed from the scene and which may be released at the discretion of the towing service or storage facility.

**IMPOUNDED VEHICLE** – A vehicle which is being held in custody by virtue of a police order and which requires permission of the impounding authority to release.

**OWNER'S REQUEST** – a motorist who requires:

    a.   Police assistance for contacting any wrecker service after experiencing mechanical problems.

    b.   A specific wrecker service after vehicle was involved in a traffic crash or crime in which the owner or driver is not a subject. All law enforcement involvement with the



vehicle must be completed before it is towed.

DWDL/RM/JM/HC/br
F:\POLI\TECHSERV\2003SOP\133 Vehs Towed or Impounded.doc
FC:TS:PSU:SOP #133 REVISED

**APPROVED BY:**

**Donald W. De Lucca**
**Chief of Police**

References to Form Book:

Form 015-W -  Owner / Driver / Designee Release Form

Form 133-B -  Vehicle Storage Receipt

Form 015-DD - Vehicle Report

MIAMIBEACH



|  | GENERAL ORDER | GO# 17-04 |
| --- | --- | --- |
| | INVENTORY SEARCH - TOWED/IMPOUNDED VEHICLES | |
| | CALEA Standard(s): 1.2.4 | |

**PURPOSE:** To provide guidance and clarify employee responsibilities regarding the inventory of seized vehicles pursuant to Standard Operating Procedure (SOP) #133, Towed/Impounded Vehicles, section VI through the addition of number 14.

**SCOPE:** This General Order (GO) will be read in conjunction with SOP #133 - Towed/Impounded Vehicles. This GO applies to all employees legally authorized to affect a vehicle tow and is effective immediately.

**POLICY:** It is essential that a complete inventory of every vehicle be conducted pursuant to SOP #133. When a legally authorized employee initiates a tow, he/she becomes responsible for the entire vehicle – the vehicle, its parts, and its contents. [1.2.4]

## PROCEDURE:

VI.    Impound/Tow Procedures

14.    All vehicle inventories will be recorded on an officer's body worn camera (BWC). If the inventorying employee is not equipped with a BWC, an officer so equipped will respond to the vehicle's location. The inventory will not begin until an officer equipped with a BWC is on scene. The entire inventory will be recorded, the OIR notated that the inventory was captured on a BWC, and the BWC inventory data will be downloaded pursuant to SOP #152, Body Worn Cameras.

DJO/rc/pjp

APPROVED BY:

*Daniel J. Oates*

**Daniel J. Oates**
**Chief of Police**

AO388-C
**GOVERNMENT EXHIBIT**

CASE NO.    18-20889-CR-JEM

EXHIBIT NO.    16



MIAMIBEACH

| | STANDARD OPERATING PROCEDURE | SOP #152 |
|---|---|---|
| | BODY-WORN CAMERAS | |
| | CALEA Standard(s): 1.2.3; 17.5.3; 41.3.8; 83.2.2; 84.1.1 | |

**PURPOSE**:

To establish procedures and guidelines for the use, operation and maintenance of body worn cameras (BWC) by Department employees.  This SOP rescinds General Order 16-03 effective immediately.

**SCOPE**:

This Standard Operating Procedure (SOP) applies to all Department employees.

**POLICY**:

The Department will utilize BWCs to document law enforcement interactions with the public by recording evidence of actions, conditions and statements.  Employees have a legal right to capture and record footage during all official interactions. [41.3.8a]

**DEFINITIONS**:

BODY WORN CAMERA - a portable electronic recording device that is worn on a law enforcement officer's person that records audio and video data of the officer's law enforcement related encounters and activities.

BUFFERING MODE - When the BWC is in the on position until such time the record button is depressed.

CALL FOR SERVICE - Any dispatched or self-initiated activity by any employee to resolve, correct or assist in a particular situation.

DEADLY FORCE - Force that is likely to cause death or great bodily harm as defined in FS 776.06.

GREAT BODILY HARM - An injury that creates a substantial risk of death, causes permanent disfigurement or results in long-term loss or impairment of the functio[n] any bodily member or organ.

Effective Date:  04/28/2015
Revised Date:  10/30/2017

SOP #152
Page 1 of 15

MIAMIBEACH
POLICE

AO386-C
**GOVERNMENT
EXHIBIT**

CASE
NO.   18-20889-CR-JEM

EXHIBIT
NO.        17

ISSUED BWC - Collectively means an issued or replacement BWC authorized and configured by the BWC System Administrator or designee.

RECORDING MODE - When the BWC record button has been pressed twice and is recording.

## PROCEDURE:

I. General Rules Regarding BWC Operation and Use

    A. Body worn cameras will be issued to all sworn personnel, Public Safety Specialists and the Road Rangers, for use during on-duty and overtime assignments.

    B. Sworn members assigned to Patrol up through the rank of lieutenant are required to activate their BWC in recording mode during all citizen interactions, incidents and calls for service, self-initiated field activities, arrests, interviews, transports, investigations and initial response to a call for service, crime scene or other police event.

    C. Detectives assigned to the Crime Suppression Teams will activate their assigned BWCs during all citizen interactions, incidents and calls for service, arrests, transports, investigations and initial response to a call for service, crime scene or other police event.

    D. Members assigned to the Criminal Investigations and the Support Services Divisions, up through the rank of lieutenant, when engaged in uniformed assignments, will wear and operate their assigned BWC in the same manner as patrol officers pursuant to this SOP.

    E. All Detectives will activate their assigned BWCs when making an arrest of a suspect. The purpose of the BWC activation is to document the handling of the suspect at the time of arrest and to capture the suspect's search incident to arrest and any spontaneous statements made or other evidence seized.

    F. Detectives will turn their BWC on to recording mode at the point when the detective arrives at an ongoing crime scene to capture spontaneous statements, expressions and body language. Detectives will keep their BWC recording until initial investigatory police action has finished.

    G. All detectives will activate their assigned BWC during the execution of search warrants at the time when there is an active physical search.

    H. The Department recognizes that situations may exist in which, due to tactical and safety considerations, a detective cannot utilize the BWC. In these instances detectives are required to document in the incident report the reason they did not record an activity.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 2 of 15

MIAMIBEACH
POLICE

I.     With the approval of his/her supervisor, an individual member of a Crime Suppression Team (CST) will not be required to wear a BWC while working in an undercover capacity or in the support of an undercover investigation by another unit or agency. Any pre-planned operation will be guided by an operations plan written prior to the execution of the operation that will specify which portion(s) of the operation and which personnel will be exempt from the use of BWCs. The Street Crimes Captain or designee will approve any such operations plans.

J.     BWCs will be worn in a location designated by the Chief of Police or designee with input from the Training Unit, BWC instructors and with appropriate consideration given to practical factors such as BWC configuration and tactical operations. The designated position of the BWS is the center of the chest area, not blocking the employee's name.

K.     The BWC will be worn, utilized and maintained in a state of operational readiness during the employee's entire shift. When not in use, officers will maintain their BWC in its assigned location.

L.     The BWC will be activated during all interactions with a detainee, including transportation of the detainee to the proper receiving facility and holding areas. The BWC will be activated at all times while interacting with a detainee or performing administrative functions in the Juvenile Processing Area.

II.    Specific Rules Regarding Activation and Deactivation of the BWC.

A.     Employees will wear their assigned BWC in the buffering mode at all times until they are expected to record an event other than for the exceptions listed in this SOP.

B.     Employees are not legally obligated to advise people that they are being recorded by the BWC. If asked, employees will acknowledge that their BWC is recording.

C.     Officers will immediately activate in recording mode their BWC upon arrival at a call for service and announce via the police radio "arrival - BWC activated."

D.     The BWC will remain in recording mode until the conclusion of an incident/encounter or a supervisor has instructed that a recording be stopped. Officers will document on the BWC and in the case report that a supervisor has authorized that a recording be stopped as well as the authorizing supervisors' name.

E.     Any officer that takes an action that results in death or great bodily harm to another person or an officer(s) who is a witness to such an incident will deactivate his/her BWC after the scene has been declared secure by the on-scene incident commander or on-scene supervisor.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 3 of 15


MIAMIBEACH
POLICE

F.     There is no expectation of privacy in a person's residence or other building when an officer lawfully enters the residence or other building when the officer has been granted consent to enter, to serve a warrant or under exigent circumstances. In those instances the BWC will remain activated other than in those exceptions articulated in this SOP.

G.     Employees who activate the BWC while on duty or on an overtime capacity are required to document use of the BWC at the end of all related Case Reports, Case Supplemental Reports, CID Supplemental Reports, Arrest Affidavits or in CAD notes if no report is required.

H.     In the case of a BWC recording images of undercover officer(s), confidential informant(s) and/or other persons who may be exempt or protected from disclosure under state or federal statutes, a notation of the exempt or protected images will be included at the end of the Complaint/Arrest Affidavit and/or Case Report.

I.     When an arrest is made, the name and court identification number of every employee who recorded BWC footage related to the incident will be listed on the last line(s) of the Complaint/Arrest Affidavit narrative.

J.     Employees using a BWC during an interview, interrogation, statement, confession and/or utterance will: [1.2.3 a-c; 41.3.8c]

   1.     Document the existence of a recorded statement on all related reports; [84.1.1c]

   2.     Properly record Miranda Warnings when given;

   3.     Attempt to secure a signed consent and/or waiver forms;

   4.     Document all consents, waivers and/or refusals on the BWC and in writing; and

   5.     Supplement the BWC with a traditional digital audio recording device when available.

K     An employee who fails to activate their BWC when required will:

   1.     Notify his/her immediate supervisor as soon as practicable, but no later than the end of their tour of duty or detail; and

   2.     Document the name of the supervisor notified and the reasons for failing to activate the BWC on all reports related to the incident. When no reports are required, a CAD incident will be generated and documented in CAD notes. [41.3.8]

L.     Employees will notify their supervisor at the conclusion of any encounter that may generate a complaint.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 4 of 15

MIAMIBEACH
POLICE

M.   Employees who are in doubt about recording an incident will activate their BWC and request guidance from their supervisor at the conclusion of the event.

N.   All vehicle inventories will be recorded on an officer's BWC. If the inventorying employee is not equipped with a BWC, an officer so equipped will respond to the vehicle's location. The inventory will not begin until an officer equipped with a BWC is on scene. The entire inventory will be recorded, the OIR notated that the inventory was captured on a BWC, and the BWC inventory data will be downloaded pursuant to this SOP.

III.   Prohibitions

A.   No employee may utilize a BWC not authorized and issued by the Department. The unauthorized use of a Department BWC or other electronic media and/or BWC recordings and/or audio recordings is strictly prohibited. All Department personnel are strictly prohibited from:

   1.   Removing, dismantling or tampering with any hardware or software associated with the BWC;

   2.   Destroying, altering, deleting, modifying, tampering, editing or disseminating any electronic data associated with the BWC;

   3.   Downloading or converting any BWC electronic data for personal use;

   4.   Allowing a citizen to view a BWC recording at the incident scene or at any other time unless directed by a supervisor in response to a complaint and or allegation;

   5.   Copying or sharing any BWC electronic data other than articulated in this SOP;

   6.   Recording on the BWC any particular person based solely on the persons' race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression thereof, homeless status, physical disability, political affiliation or any other recognized protected status;

   7.   Activating the BWC during strip searches;

   8.   Activating the BWC upon arrival at a treatment facility that would include, but not be limited to a hospital, psychiatric facility or trauma and/or support center if the individual to be interviewed does not wish to be recorded.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 5 of 15

MIAMIBEACH
POLICE

9.  BWC recordings during discussions with other law enforcement personnel concerning tactical, investigative and/or administrative strategies or options of a specific case;

10. BWC recordings during conversations with confidential informants and undercover officers to protect confidentiality and officer safety;

11. BWC recordings while performing administrative functions, such as report writing, after the citizen/arrestee interaction has ended;

12. BWC recordings in court;

13. BWC recordings while on breaks;

14. BWC recordings during discussion of a case with other officers;

15. BWC recordings during conversations with Department personnel without their knowledge;

16. BWC recordings in the DUI testing rooms during the testing process. BWC's utilize technology that interferes with the breath testing instrument. All BWC's, BWC Portable Media Players, police radios, cellular phones and any other devices utilizing Bluetooth® technology will be secured outside the DUI testing rooms.

17. The prohibitions set forth in this section do not apply in circumstances where the BWC is recording conduct pursuant to a specific law enforcement action approved by the Chief of Police or designee.

18. The use of a BWC for personal reasons and/or the uploading or posting of electronic media onto any public and/or social media website and/or storing any BWC on any storage medium not approved by the Department is strictly prohibited.

B.  Officers and Detention Officers are not required to activate their BWC:

1.  While performing administrative functions at the Main Prisoner Processing Area control counter desk console; and

2.  While performing administrative functions, such as report writing, after the prisoner has been secured inside a holding cell in the Main Prisoner Processing Area or Criminal Investigation Division Prisoner Processing and Holding Area.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 6 of 15

MIAMIBEACH
POLICE

IV.   Critical Incidents and Special Circumstances

    A.   During the course of a shift, officers equipped with a BWC may encounter situations where critical incidents or special circumstances are captured on video. Those situations require an immediate response from investigative units and include, but are not limited to, the following:

        1.   Officer-involved contact shootings;

        2.   Officer-involved non-contact shootings;

        3.   In-custody deaths;

        4.   Officer-involved traffic crashes with fatalities or serious injuries;

        5.   On-scene complaints of excessive force; and

        6.   Death or great bodily harm to an employee.

    B.   The BWC will remain affixed to the employee in the same position as it was affixed throughout the event and will not be handled unless emergency medical attention is necessary and requires that the device be removed.

    C.   The lead investigator, with the assistance of a Crime Scene Technician, will retrieve the BWC device from the employee and process it according to the investigating agency's standards for the handling of evidence. In addition, the lead investigator or his/her designee will also coordinate the response of a Department BWC Administrator or his/her designee, who will be responsible for the recovery and storage of all video evidence captured on the device. Each transfer of custody will be documented pursuant to SOP #006 - Evidence.

    D.   The BWC System Administrator or his/her designee will download the BWC video in the presence of the lead investigator. The download will be performed in a secure location accessible only to the BWC System Administrator.

    E.   Officers equipped with a BWC will be cognizant that any conversations following the event will be captured on the BWC. Therefore, protected conversations with counsel, clergy or family will not take place until the BWC is turned off.

V.   Supervisory Responsibilities

    A.   Supervisors will ensure that employees comply with all BWC policies, procedures and training.



B.  Supervisors will check the operational readiness of the BWC as part of the line inspection process to include turning the BWC on, checking the record function and turning the BWC off.  Non-operational equipment will be noted and sent for repair as soon as possible.  Officers who discover at any time during their shift that the BWC is damaged or malfunctioning will immediately notify their immediate supervisor.

C.  Supervisors will document circumstances in which an employee failed to activate the BWC, improperly deactivated the BWC or captured restricted/prohibited video.  Supervisors will submit a memorandum detailing the findings to their Division Commander via the Chain of Command.

D.  The Division Commander will direct further action if he/she determines that an employee's acts were intentional or avoidable.

E.  If the Division Commander determines that a restricted/prohibited recording was inadvertent or unavoidable, the details of the incident will be provided to the Chief of Police, who will provide further direction to the BWC System Administrator or his/her designee.

F.  In cases where the immediate retrieval of BWC data is required, supervisors will collect the BWC from the employee and dock the BWC into the Evidence Dock.  Upon completion of the video upload, the BWC will be returned to the employee and involved personnel will be notified when the video is available for review.

G.  With the exception of officer involved shootings or other incidents that result in great bodily harm or death, supervisors will review BWC video in all cases where there was a use of force, pursuit, injury to officer, injury to prisoner, citizen complaint or any other circumstance where the video may clarify events.

H.  Supervisors will document their reviews in a report appropriate to the incident.  [41.3.8g]

I.  Supervisors will notify their Chain of Command of instances where a controversial citizen-police encounter has occurred.  The employee's Captain may review the encounter and set the appropriate category for retention.  Other Command Staff members and/or the City Attorney or his/her designee may be consulted if clarification is required.

J.  Supervisors have an obligation to confer with officers at the end of each tour of duty to ensure that BWC recordings are categorized, identified and preserved pursuant to this SOP.

Effective Date:  04/28/2015
Revised Date:  10/30/2017

SOP #152
Page 8 of 15

MIAMIBEACH
POLICE

VI.    BWC System Administrator will be responsible for:

    A.    Setting and maintaining user and group authority levels, passwords and any other required configuration of the evidence storage system under direction of the Chief of Police or designee;

    B.    Managing inventory, issuing devices, training and updating device settings;

    C.    Assisting with manual uploads to the external cloud server, when necessary;

    D.    Handling recordings to include restricted/prohibited footage pursuant to direction from the Chief of Police or his/her designee;

    E.    Managing the list of categories and notifying supervisors when users fail to categorize their BWC recordings or otherwise fail to properly use, store or maintain their issued BWC;

    F.    Providing support to Department employees in all aspects of the BWC and video storage system;

    G.    Providing audit reports of monitoring and log access to recorded, deleted, copied and/or edited recordings;

    H.    Maintenance of a system for the management of video retention and video purging;

    I.    Conducting quality assurance reviews when directed by the Chief of Police or his/her designee; and

    J.    Monitoring the Department's use of BWC with a documented annual review to identify necessary policy and procedure modifications, program continuity and review of camera-captured data, frequency and quantity. The documented annual review will be completed by March of each year and forwarded to the Chief of Police via the Chain of Command. [41.3.8b,c,e,g]

VII.    BWC Electronic Media Storage

    A.    BWC electronic media will be downloaded at the end of each shift prior to being placed back in service. All electronic data and media are the property of the Department.

    B.    Each Patrol officer will wear their assigned BWC during their entire tour of duty, absent a BWC malfunction. Any malfunction will immediately be reported to the on-duty supervisor and a replacement obtained if available pursuant to this SOP.

C.     Officers will retrieve their assigned BWC at the beginning of their shift. A BWC with a depleted battery must be docked as reasonably soon as possible. An employee docking a BWC for this reason prior to the completion of a regular or overtime shift, must promptly notify his/her immediate supervisor of the BWC's status via Department email.

VIII.    BWC Electronic Media Retention and Public Records Requests

A.     All video recordings collected using the BWC system are official records and are the exclusive property of the Department. BWC electronic media will be maintained pursuant to the State of Florida Records Retention Schedule. The Department will retain any video captured by Department issued BWCs for a minimum of 90 days except as set forth below:

1.     Recorded video associated with an arrest, use of force, pursuit, criminal investigation, Internal Affairs investigation and/or complaint against an employee will be retained pursuant to the General Records Retention Schedules established by the Florida Department of State and instructions from the City Attorney or his/her designee.

2.     Vehicle crashes involving an employee and events involving injury to an employee and/or citizen or any recording of an event or public interaction the officer or his/her supervisor reasonably believe could lead to litigation against the officer or the City of Miami Beach will be retained for five years.

3.     Police interaction or delivery of police services that may be perceived as controversial will be reviewed by the employee's Captain. The Captain will set the appropriate category for retention in conjunction with the City Attorney or his/her designee.

B.     The Department will invoke appropriate exemptions set forth in Florida Statutes, Chapter 119 or any other statutory provision limiting or restricting access to video recordings or metadata in cases involving officer-involved shootings, serious use of force, officer misconduct or any other circumstances as determined by the Chief of Police or his/her designee. This section will not be read to obstruct or interfere with an employee's rights as provided by Florida Statutes or Department policy.

C.     All BWC recordings will be uploaded to the contracted vendors cloud server. The Department reserves the option to utilize alternative storage methods on a case-by-case basis at the discretion of the Chief of Police or his/her designee.

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 10 of 15

MIAMIBEACH
POLICE

D.   The BWC System Administrator or his/her designee will redact or exempt confidential footage pursuant to the applicable state or federal statute prior to releasing any recording(s). [41.3.6c,d,g]

E.   Employees will refer all citizen requests for BWC video to the Records Section.

F.   Release of BWC recordings will be governed by Chapter 119 of the Florida Statutes or other Florida or Federal law. No electronic media will be released to Department personnel or another criminal justice agency or organization for trial or other reasons without prior approval from the Chief of Police or designee. No information contained on any electronic medium will be released to any other person absent the prior approval of the Chief, his designee or by legal requirement. The Chief of Police or designee will be notified prior to the release of any electronic medium pursuant to any legal requirement.

G.   The Chief of Police or designee will authorize the release of BWC recordings pursuant to this SOP, Public Records Request requirements and/or other legal precedent. This process will include reviewing BWC recordings to locate the requested recordings, determining which portions are subject to public release under Public Records Request requirements and/or other legal precedent and redacting any portions that state law prohibits from disclosure.

H.   In certain cases, the Department may opt to release BWC camera recordings. The release of any BWC recordings must be authorized by the Chief of Police or designee prior to such release.

I.   Whenever possible and without compromising the evidentiary content of any recordings, the images of persons not involved in an incident will be redacted prior to release of the recording, if applicable.

J.   Complete confidentiality is required of all personnel. Personnel will hold all recordings in trust and will not divulge, disclose, convey, transmit or otherwise make known or available any recording to any person or entity other than as directed by this SOP.

IX.   Review and Release of BWC Electronic Media

A.   Recordings may be viewed by:

1.   Employees, supervisors and investigators when preparing incident reports to ensure the accuracy and consistency of their documentation;

2.   An involved employee prior to making a statement concerning a recorded incident that might be used in an administrative review or court proceeding; and



3. The City Attorney or his/her designee with notice to the Chief of Police.

B. Recordings may be accessed:

1. Immediately, via the portable media player; or

2. By accessing the cloud server once all the data has been uploaded.

X. Categorizing BWC Recordings

A. Employees will accurately categorize and identify BWC recordings at the conclusion of each incident, but no later than the end of their tour of duty. [84.1.1a]

B. Employees will contact their supervisor if they need assistance with identification or categorization or retention guidelines. The supervisor may contact the BWC Administrator or his/her designee for further assistance as needed.

C. BWC recordings may document the discovery and/or collection of evidence. Employees, investigators or supervisors will categorize BWC recordings to preserve footage of evidentiary value. [83.2.2]

D. Employees will identify (ID Field) each recording with the CAD incident/case number.

E. BWC devices will be placed in the Evidence Dock at the conclusion of each employee's on-duty or overtime detail. Evidence Docks are located in the Headquarters roll call room and Criminal Investigation Section and at the North End Substation. Once docked, the BWC will not be removed until the upload process has been completed.

F. Supervisors may review BWC video recordings in the following circumstances:

1. Independently or when requested by an employee to document performance, heroic actions and/or other commendable service for appropriate recognition and commendation;

2. To investigate a complaint against an employee or a specific incident in which the employee was involved;

3. When there is a pattern of allegations of abuse, misconduct or the Personnel Early Warning System (PEWS) has triggered;

4. To identify videos for training purposes and instructional use;

Effective Date: 04/28/2015
Revised Date: 10/30/2017
SOP #152
Page 12 of 15
MIAMIBEACH
POLICE

5.   To monitor the performance of an employee in their chain of command and/or during an officer's probationary status; or

6.   When officers agree to a more intensive review as a condition of employment.

G.   Supervisors, at the direction of the Chief of Police or designee, may conduct random audits of BWC video recordings to monitor compliance with the program and assess overall employee performance. Audits will be truly random and not be used to target a specific officer.

1.   The Internal Affairs Unit Commander or designee will be authorized to review BWC recordings. A specific review may be requested by a supervisor.

2.   Common situations in which supervisors may ask for a review of BWC electronic media include, but are not limited to, the investigation of a complaint against an officer or a specific incident in which the officer was involved.

3.   Any officer or supervisor can recommend, through their chain of command by memorandum to the Support Services Division Commander, that a particular BWC recording be used for training purposes. The Support Services Division Commander will review the specified recording to determine its training value.

H.   At a minimum quarterly, the BWC Administrator or designee will conduct a random documented quality assurance review of at least five of the BWC recordings to ensure compliance with this SOP. In addition to the quarterly review of at least five BWC recordings, Division Majors will conduct periodic quality assurance reviews of BWC recordings at their discretion. [41.3.8g]

I.   The BWC Administrator or designee will conduct a forensic review if the BWC malfunctioned.

XI.   Maintenance [17.5.3; 41.3.8e]

A.   Employees will inspect their BWC and all associated equipment at the beginning of their shift.

B.   Employees will ensure that the BWC lens and microphone are clear of debris that may obstruct or in any way degrade images or audio.

C.   Employees will ensure their BWC battery is charged at the start of their shift or assignment.

D.   Any damage, malfunction or other operational problem will be immediately reported to the employee's supervisor.

Effective Date: 04/28/2015
Revised Date: 10/30/2017
SOP #152
Page 13 of 15
MIAMIBEACH
POLICE

E.   When notified that a BWC is damaged, malfunctioning or has an operational problem, the supervisor will inspect the device and decide whether to continue using the BWC or have the officer return it for replacement. Supervisors must consider the extent of damage and the availability of spare or replacement devices. The supervisor will notify the BWC Administrator or his/her designee in writing of the damage, malfunction or other operational problem.

F.   BWC devices will be inspected and documented during semi-annual Line Inspections.

G.   BWC System Administrator or his/her designee will evaluate all devices turned in due to damage or malfunction.

H.   Any device which cannot be repaired by the BWC System Administrator will be sent for repair or disposed of appropriately.

I.   Spare BWCs will be housed within the Body Camera Depot (BCD) and will be marked Spare 01 - Spare 10.

J.   The spare BWC will be signed out via the PEU Equipment Sign-Out Log. Once the spare BWC is signed out, the employee's supervisor will contact the on-call BWC Administrator or his/her designee to activate the device.

XII.   Training

A.   BWC training is required for all Department personnel who may use or otherwise be involved with BWC's prior to using a BWC. The BWC System Administrator or designee will ensure that all BWC training meets current manufacturer guidelines and specifications.

B.   BWC training will include the following:

1.   A documented review of this SOP;

2.   An overview of:

a.   Public records requests;

b.   Evidence management software;

c.   Nomenclature;

d.   Procedures for the proper operation of the equipment;

e.   Video transfer procedures;

f.   Identification and categorization of BWC video evidence;

Effective Date:   04/28/2015
Revised Date:   10/30/2017

SOP #152
Page 14 of 15

MIAMIBEACH
POLICE

g. Security;

h. Retention guidelines;

i. Reporting improper recordings;

j. Preparing and presenting digital evidence for court;

k. Hands-on exercises that replicate operating the BWC;

l. Procedures for downloading BWC electronic media;

m. Procedures for accessing and reviewing BWC electronic media; and

n. Procedures for documenting and reporting any malfunctioning BWC

 3. Refresher training will be conducted by the BWC Team, at a minimum, biennially.

XIII. Compliance to SOP

Violation of any part of this SOP may result in discipline.

DJO/lb/ab/pjp

APPROVED BY:

_Daniel J. Oates_
**Daniel J. Oates**
**Chief of Police**

Effective Date: 04/28/2015
Revised Date: 10/30/2017

SOP #152
Page 15 of 15

MIAMIBEACH
POLICE







**Miami Beach Police** ✔
@MiamiBeachPD

Follow

‹

ARREST: Arsenal of Weapons & Bullet-Resistant Vest Seized After Man is Charged with DUI & Weapons Charges Near Ocean Drive. #YourMBPD



6:25 AM - 25 Oct 2018

**44** Retweets  **80** Likes

David DelaEspriella, Paul Acosta  Daniel J. Oates and 3 others

♡ 16    ⟲ 44    ♡ 80



GOVERNMENT
EXHIBIT

CASE
NO. 18-20889-CR-JEM

EXHIBIT
NO. 19